SEYFARTH SHAW
Robert W. Tollen (SBN: 038875)
Christopher J Pirrone (SBN: 197852)
101 California Street, Suite 2900
San Francisco, California 94111-5858
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
ALLEGIANCE TELECOM, INC.;
ALLEGIANCE TELECOM OF CALIFORNIA, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ICG COMMUNICATIONS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> ALLEGIANCE TELECOM, INC., a Delaware corporation; ALLEGIANCE TELECOM OF CALIFORNIA, INC., a Delaware corporation; and PHIL SANDSTROM, an individual <br><br> Defendants. | Case No. C01-3706 CW <br><br> **POST HEARING MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

I.

The Telecommunications Act prohibits a carrier from disclosing or permitting access to certain information, "[e]xcept as required by law." 47 U.S.C. § 222(c)(1). During oral argument, the Court and the parties engaged in a colloquy over the meaning of the word "law." Counsel for Allegiance Telecom, Mr. Tollen, conceded, for purposes of the argument, that the word has a broader meaning than just statutes and that it encompasses the common law, statutes, regulations authorized by statute, and the Federal Rules. The Court suggested that conceding a meaning that broad might undermine Allegiance's position. Mr. Tollen thought it did not.

Mr. Tollen was correct to include the Federal Rules within the "law." Case law holds that the Federal Rules have the force and effect of a federal statute. *See,* for example, *Oklahoma Radio Associates v. Collins,* 969 F.2d 940, 942 (10th Cir. 1992). They are effective, however,

solely within their limited scope. The Rules Enabling Act, 28 U.S.C § 2072, authorizes the Supreme Court to prescribe "general rules of practice and procedure." 28 U.S.C. § 2072(a). "Such rules shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). "[T]he Federal Rules … must be interpreted consistently … with the limited mandate of the Rules Enabling Act, 28 U.S.C. § 2072 (1976), which authorizes only Federal Rules that relate to 'practice and procedure.'" *Answering Service, Inc., v. Egan,* 728 F.2d 1500, 1506 (DC Cir., 1984). The Rules Enabling Act "prescribes … that such rules shall not abridge, enlarge or modify any substantive right …." *Affholder, Inc., v. Southern Rock,* 746 F.2d 305, 309 (5th Cir., 1884). The Telecommunications Act's prohibition against disclosure of protected information is not a rule relating to practice or procedure. It is a substantive rule. The Federal Rules may not abridge, enlarge or modify it.

ICG thinks the district court may render "an act" one "required by law" "by entering an order." Reply In Support of Motion, p. 2:10-11. ICG thinks such has been the law of the land since *Marbury v. Madison.* ICG is wrong. In deciding <u>whether</u> to issue an order compelling disclosure, there must be something there, something in existence, extent, something <u>requiring</u> disclosure, to which the Court may look for authority <u>before</u> the Court issues an order. The difference between the common law, statutes, regulations, and the Federal Rules, on the one hand, and the order the Court will issue in this dispute, on the other hand, is that the latter exist <u>before</u> the dispute is resolved. They are available as authorities to guide the Court in deciding upon the correct order. The order itself is nothing to which the Court may look for guidance on whether it has authority to issue the order. That is the difference between the common law, statutes, regulations, and the Federal Rules, which are "law," and the order this Court will issue, which is not the "law." The Court may not issue an order compelling disclosure based upon the authority of the order the Court will issue to compel disclosure.

II.

ICG's opening brief referred to 47 C.F.R. § 64.2005(d), which recites that a carrier may disclose otherwise non-disclosable information "to protect the rights or property of the carrier, or to protect users of those services and other carriers from fraudulent, abusive, or unlawful use of,

-2-
POST HEARING MEMO IN OPPOSITION TO PL'S MTN TO COMPEL; Case No. C01-3706 CW

or subscription to, such services." The Court has asked the parties to comment on the potential applicability of that language to the dispute at hand, particularly the portion of that language that authorizes a carrier to disclose information to protect other carriers.

Preliminarily, the language of the regulation is the same as the language of the statute. Section 222(d)(2) of Title 47 authorizes an exception to the ban on disclosure "to protect the rights or property of the carrier, or to protect users of those services and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, such services…."

Section 222(d)(2) allows disclosure of otherwise non-disclosable information to protect other carriers from fraudulent, abusive, or unlawful use of, or subscription to, *such services.* The first question must be: what services are "such services"? The question is answered by looking more broadly at subsection (d). It is entitled "Exceptions," and reads in relevant part as follows (italics added):

> (d) Nothing in this section prohibits a telecommunications carrier from using, disclosing, or permitting access to customer proprietary network information obtained from its customers …
>
> (1) to initiate, render, bill and collect for *telecommunications services*; [and]
>
> (2) to protect the rights or property of the carrier, or to protect users of *those services* and other carriers from fraudulent, abusive, or unlawful use of, or subscription to, *such services*; ….

"Such services" refers to the "telecommunications services" of the potentially disclosing carrier. Thus, subsection (d)(2) refers to disclosure of information needed to protect other carriers from *fraudulent, abusive or unlawful use of the telecommunications services of the potentially disclosing carrier* or from *fraudulent, abusive or unlawful subscription to its telecommunications services*.

This case involves allegations that, as part of their competition for customers, agents of Allegiance Telecom (a) showed certain potential customers a letter ICG had written and delivered to some of its customers, reciting that their ICG service was in jeopardy, and (b) caused a third-party, voice mail, messaging service to deliver a false message to certain ICG customers, also reciting that their ICG service was in jeopardy. *See* ICG's Opening

1  Memorandum, pages 5:21 – 7:9.  Those allegations relate to Allegiance's alleged method of
2  competition.  They do not relate to any use of its telecommunications services.   The exception is
3  not applicable.

4      Beyond the plain language of the statute itself, Allegiance's research has disclosed no
5  case interpreting the language in question.  The Conference Report on the Telecommunications
6  Act of 1996, HR 104-458 (104th Cong., 2nd Sess, 1996), merely recites that "the conferees intend
7  new subsection 222(d)(2) to allow carriers to use CPNI in limited fashion for credit evaluation to
8  protect themselves from fraudulent operators who subscribe to telecommunications services, run
9  up large bills, and then change carriers without payment."  The report does not recite anything
10 about protecting other carriers.

11     While this memorandum was being drafted, ICG electronically filed its memorandum.
12 As they are supposed to be simultaneous, counsel for Allegiance will not open ICG's
13 memorandum until after this memorandum has been electronically filed.

14
15 DATED: December 18, 2002    Respectfully submitted,
16     SEYFARTH SHAW
17
18     By _____/s/_____
           Robert W. Tollen
19     Attorneys For Defendants
       ALLEGIANCE TELECOM, INC.;
20     ALLEGIANCE TELECOM OF
       CALIFORNIA, INC.